## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN RELVAS**; **ESTATE OF RUI RELVAS; ESTATE OF JOAO RELVAS; ANTONIO RELVAS**; **JOSEFINA RELVAS,** Individually and as Representative of the Estate of Rui Relvas and the Estate of Joao Relvas; **SAMUEL F. SPEARING; ESTATE OF JOHN SPEARING; LOIS SPEARING**; **RICHARD M. SPEARING**, Individually and as Representative of the Estate of John Spearing; **ESTATE OF CHARLES R. RAY**; **ESTATE OF LUCIAN E. RAY, JR.**; **AKIKO RAY**, Individually and as Representative of the Estate of Charles R. Ray; **ESTATE OF JUNE L. RAY**; **DOROTHY WAGNER**, Individually and as Representative of the Estate of Lucian E. Ray, Jr. and the Estate of June L. Ray; **ESTATE OF FREDDIE HALTIWANGER**; **ESTATE OF MARY M. HALTIWANGER**; **ESTATE OF FREDDIE L. HALTIWANGER**; **SHIRLEY MITCHELL**, Individually and as Representative of the Estate of Freddie Haltiwanger, the Estate of Freddie L. Haltiwanger, and the Estate of Mary M. Haltiwanger; **ESTATE OF MARION KEES**; **ESTATE OF MARIAN KEES**; **ESTATE OF HARVEY KEES**; **JOHN L. KEES**, Individually and as Representative of the Estate of Marion Kees, Estate of Marian Kees, and Estate of Harvey Kees; **ESTATE OF LYNDON HUE**; **ESTATE OF ELAINE HUE**; **ESTATE OF JARRETT HUE**; **WILTON HUE JR.**; **DONNA MYERS**; **MYRA HAYNES**; **BRETT HUE**; **TINA HAMILTON**; **JILL STOLTZ**, Individually and as Representative of the Estate of Elaine Hue and the Estate of Jarrett Hue; **WILTON HUE**, Individually and as Representative of the Estate of Lyndon Hue; **ESTATE OF MARCUS COLEMAN**; **ESTATE OF KENNETH COLEMAN**; **ESTATE OF DOROTHY COLEMAN**; **MARSHA TURNER**; **MICHAEL COLEMAN**, | **Civil Action No. 1:14-cv-01752-RCL** <br><br> **Judge:  Royce C. Lamberth** |

Individually and as Representative of the Estate of Marcus Coleman, Estate of Kenneth Coleman, and Estate of Dorothy Coleman; **SHERYL WESTERVELT**; **ESTATE OF DAVID BOUSUM**; **ESTATE OF JOANNA BOUSUM**; **GERALD BOUSUM**, Individually and as Representative of the Estate of David Bousum and the Estate of Joanna Bousum; **ESTATE OF KEVIN CUSTARD**; **MICHAEL ALLEN CUSTARD**; **ESTATE OF LORRAINE ENGSTROM**; **YVONNE CUSTARD**; **TERRI REA**; **CHYRISSE SHERMOCK**, Individually and as Representative of the Estate of Kevin Custard and the Estate of Lorraine Engstrom; **ESTATE OF RICHARD BARRETT**; **ESTATE OF JAMES BARRETT**; **JAMES A. BARRETT, JR.**; **SUE BARRETT**; **STEPHANIE BARRETT ELKINS**, Individually and as Representative of the Estates of Richard Barrett and James Barrett; **WILLIAM FAULK**; **BRADLEY GROSS**; **MARK BOYD; ANNETTE BOYD**; **TIMOTHY WHITFIELD**; **JEFF WHITFIELD**; **GARY WHITFIELD**; **NEIL WHITFIELD**; **JIMMY WHITFIELD**; **MARIANNE SCHAFFER**; **SCOTT SMITH**; **JEFFREY KULP; LEO MORA**; **DARRELL SILER**; **CARIE MCCORMACK**; **BENJAMIN FOSS; PATSY FOSS**; **BRUCE COCHRAN**; **JOHN IJAMES**; **ROSS MORRISON**; **BRIAN ZEBROWSKI**; **EDWARD MCCARRON, JR.**; **TIMOTHY J. KUEHNE**; **GREG SIMMONS**; **AL DUNCAN; ESTATE OF CLEMON ALEXANDER; ROCHELLE ALEXANDER**, Individually and as Representative of the Estate of Clemon Alexander; **CLARENCE ALEXANDER**; **MIJANOU ALEXANDER**; **CYNTHIA ALEXANDER SCHWARTZ**; **ESTATE OF WINFRED B. ALEXANDER**; **MURIEL KWEYAMA**. Individually and as Representative of the Estate of Winfred B. Alexander; **CHARLES DALLACHIE**; and **GERALD SHANLEY,**

Plaintiffs,

v.

**THE ISLAMIC REPUBLIC OF IRAN**
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Tehran, Iran

AND

**THE IRANIAN MINISTRY
OF INFORMATION AND SECURITY**
Pasdaran Avenue
Golestan Yekom
Tehran, Iran,

Defendants.

## FIRST AMENDED COMPLAINT

**COME NOW** Plaintiffs in the above-styled action file this First Amended Complaint against Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security, showing as follows:

## I.   INTRODUCTION

1.   This action is brought by Plaintiffs, John Relvas, *et al*., through counsel, against the Islamic Republic of Iran and the Iranian Ministry of Information and Security for orchestrating the October 23, 1983 suicide bombing of the U.S. Marine barracks in Beirut, Lebanon.   The bombing, which killed 241 American servicemembers and injured numerous others, was the deadliest state-sponsored terrorist attack against American citizens prior to September 11, 2001.   Plaintiffs are American servicemembers who were wounded in the attack and the families and estates of servicemembers who were killed or wounded.

1975092.1

2.     Although billions of dollars of Iranian assets have been confiscated, not all victims of the attack stand to receive compensation.  It is unlikely that substantial additional, seizable Iranian assets will be located in the United States.  This means that, despite their common sacrifice, some injured servicemembers and families stand to receive millions of dollars in compensation, while many others are unlikely to receive any.

## II.     JURISDICTION AND VENUE

3.     This Court exercises both subject matter jurisdiction and personal jurisdiction over the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") (collectively, "Defendants") in accordance with the Foreign Sovereign Immunities Act ("FSIA").

4.     The FSIA grants U.S. district courts "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity."  28 U.S.C. § 1330.  Iran is a foreign state and MOIS is an agency or instrumentality of a foreign state under 28 U.S.C. § 1603(b).  Plaintiffs seek relief against Defendants in personam through a nonjury civil action.

5.     Defendants are not immune from the jurisdiction of U.S. courts because, pursuant to 28 U.S.C. § 1605A(a)(1), Plaintiffs seek money damages against Defendants for committing acts of extrajudicial killing, and providing material support for such acts, which were engaged in by Defendants' officials, employees, and agents while acting within the scope of their office, employment, or agency.

6.     Because the acts complained of occurred in Lebanon, Plaintiffs need not afford Defendants "a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration," pursuant to 28 U.S.C. § 1605A(a)(2)(A)(iii).

7.     Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

### III.    THE PARTIES

8.     The named Plaintiffs in this action consist entirely of members of the United States Marine Corps, the United States Navy, and the United States Army; their heirs at law and legatees; and their immediate family members, all of whom are qualified as claimants in accordance with 28 U.S.C. § 1605A(a)(ii), who suffered physical and/or emotional injuries as a result of the terrorist attack upon the United States Marine Corps, Battalion 1/8, Headquarters Building of the 24th Marine Amphibious Unit in Beirut, Lebanon on October 23, 1983. Members of the United States Marine Corps were assigned to the 24th Amphibious Unit. Members of the United States Navy and United States Army were present at the site of the occurrence in support of the 24th Amphibious Unit, either on a regularly assigned basis or temporarily, including on October 23, 1983.

9.     Defendant Iran is a foreign state which was, as a result of the acts hereinafter complained of, and is to the present, designated as a state sponsor of terrorism in 49 FED. REG. 2836, Jan 23, 1984, pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. app. 2405(j)).

10.     Defendant MOIS is an agency of Defendant Iran whose activities included, at all times relevant to this action, the promotion of terrorist acts directed against the armed forces of

the United States and United States citizens, by and through material support to various terrorist organizations including the Lebanese terrorist organization known as "Hezbollah."  In addition, a member of the Iranian Revolutionary Guard was utilized to drive the truck which crashed into the Marine barracks in Beirut, Lebanon on October 23, 1983 and detonated, inflicting personal injury and the death of 241 American servicemembers.

## IV.    STATEMENT OF FACTS

11.    The Republic of Lebanon is a mountainous country bordered by Israel, Syria, and the eastern shore of the Mediterranean Sea.  At the time of the 1983 bombing of the Marine barracks, and still today, Lebanon was inhabited by members of a diverse set of religious faiths, including Maronite and Greek Orthodox Christians, Sunni and Shia Muslims, and others.

12.    Lebanon did not participate militarily in the 1967 and 1973 Arab-Israeli wars.  By 1973, however, approximately one out of every ten persons living in Lebanon was a Palestinian refugee, many of whom supported the efforts of the Palestine Liberation Organization ("PLO") against Israel.  Some of these refugees engaged in guerilla warfare and terrorist activity against Israel from bases established in southern Lebanon.  Beginning in 1968, Israel engaged in reprisals against these Palestinian strongholds.  In 1975, civil war broke out in Lebanon between, on the one hand, Lebanese Muslims and Palestinian refugees, who generally supported the PLO, and on the other, Lebanese Christians, who did not support the PLO.  The war lasted for fifteen years, during which approximately twenty thousand Lebanese were killed and many others wounded.

13.    In 1979, the Shah of Iran was deposed, and the nation of Iran was transformed into an Islamic theocracy, led by the Ayatollah Ruhollah Khomeini.  The new government quickly adopted a constitution committing itself to "provid[ing] the necessary basis for ensuring

the continuation of the Revolution at home and abroad."   Toward that end, between 1983 and 1988, the government of Iran spent approximately $50 to $150 million to finance terrorist organizations in the Near East, including in the war-torn republic of Lebanon.

14.   In 1982, Israel invaded Lebanon in an effort to drive the PLO out of the southern portion of the country.

15.   Following this invasion, the Iranian government sought to radicalize the Lebanese Shi'ite community.   Iran encouraged the creation of an organization called "Hezbollah," with the goal of furthering the transformation of Lebanon into an Islamic theocracy modeled after Iran. In 1982 and 1983, Hezbollah was reliant on and strictly controlled by Iran, which provided the group with orders, military training, weapons and other supplies, and financial support.

16.   The primary agency through which the Iranian government both established and exercised operational control over Hezbollah was MOIS.   MOIS acted as a conduit for Iran's provision of funds to Hezbollah, provided the group with explosives, and, at all times relevant to the events described in this complaint, exercised operational control over the group.   In doing so, MOIS acted with the express approval of Iranian government leaders.

17.   In late 1982, with the backing of the United Nations, a multinational peacekeeping coalition, consisting of American, British, French, and Italian soldiers, arrived in the Lebanese capital of Beirut.   In May 1983, the 24th Marine Amphibious Unit of the U.S. Marines (the "24th MAU") arrived in Lebanon as part of this coalition.

18.   The members of the 24th MAU were non-combatants operating under peacetime rules of engagement.   The rules of engagement issued to the 24th MAU made clear that it did not possess combatant or police powers.   The soldiers of the 24th MAU were ordered not to carry weapons with live rounds in their chambers and were permitted to use live rounds only if directly

ordered to do so by a commissioned officer or if they found themselves in a situation requiring the immediate use of deadly force for purposes of self-defense.  "The members of the 24th MAU were more restricted in their use of force than an ordinary U.S. citizen walking down a street in Washington, D.C."  *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 50 (D.D.C. 2003).

19.     On or around September 26, 1983, MOIS sent a message to the Iranian ambassador to Syria, directing him to instruct terrorist forces in Lebanon to initiate attacks against the multinational coalition and "to take a spectacular action against the United States Marines."

20.     The Iranian ambassador subsequently contacted a member of the Iranian Revolutionary Guard ("IRG"), and instructed him to instigate the Marine barracks bombing. IRG members in Lebanon organized a meeting with Hezbollah leaders, at which they formed a plan to carry out attacks against the American and French barracks in Lebanon.

21.     A 19-ton truck was disguised so that it would resemble a water delivery truck that routinely arrived at the Beirut International Airport, which was located near the U.S. Marine barracks in Beirut.  The truck was modified so that it could transport a gas-enhanced explosive device.

22.     The truck was determined by Iranian military engineers to have an appropriate size and weight to crash through a barbed wire emplacement, fit between two sandbagged sentry posts, penetrate an iron fence gate, climb over a sewer pipe obstruction, move through a sandbag inner barrier into a passenger entry hallway, and enter the center lobby of the Marine barracks building.  Iranian military engineers further determined that an explosion from this position would have sufficient force to collapse the Marine barracks structure.

23.     On the morning of October 23, 1983, members of Hezbollah ambushed the real water delivery truck before it arrived at the barracks.  The fake water delivery truck then set out for the barracks, driven by Ismalal Ascari, an Iranian citizen and IRG member.

24.     At approximately 6:25 a.m. Beirut time, the truck drove past the Marine barracks. As the truck circled in the large parking lot behind the barracks, it increased its speed.  The truck then crashed through a barbed wire barrier and a wall of sandbags, and entered the barracks. When the truck reached the center of the barracks, the bomb in the truck detonated.

25.     The resulting explosion was the largest non-nuclear explosion that had ever been detonated, equivalent to 15,000 to 21,000 pounds of TNT.  It ripped locked doors from their doorjambs, shredded trees located 370 feet away, and shattered all of the windows at an air traffic control tower, located over half a mile away, at the Beirut International Airport.

26.     Most significantly, the four-story Marine barracks in which the bomb detonated was completely destroyed.

27.     241 servicemembers were killed, and many others were severely injured.  For many of the victims, death was not instantaneous, and they were forced to endure extreme pain and suffering and economic losses.

28.     The death certificates issued for the victims of the attack listed the cause of death as "terrorist attack."  The death certificates did not represent that the victims were killed in action.

29.     Hezbollah lacked the capacity to carry out the attack on the Marine barracks, which required careful and sophisticated planning, without Iranian material and technical support and direction.

30.     At the time of the bombing, the explosive used, bulk-form pentaerythritol tetranitrate ("PETN"), was not commercially available and was produced only by state-sponsored manufacturers for military purposes.  Bulk-form PETN was manufactured in Iran, but not in Lebanon.

31.     The attack on the Marine barracks was expressly approved by Iranian leaders, including Iran's Supreme Leader Ayatollah Khomeini and Iran's prime minister.  Given their positions of authority, their official acts are tantamount to acts by the government of Iran.

## V.     INDIVIDUAL ALLEGATIONS

32.     On October 23, 1983, when the explosive device described above was detonated, **Rui Relvas**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

33.     Decedent, Rui Relvas, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

34.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs, **Josefina and Joao Relvas**, the parents of the Rui Relvas, and **Antonio and John Relvas**, the brothers of the Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

35.     On October 23, 1983, when the explosive device described above was detonated, **John Spearing**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

36.     Decedent, John Spearing, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

37.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs **Richard M. Spearing and Samuel F. Spearing**, the brothers of the Decedent, and **Lois Spearing,** the mother of the Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

38.     On October 23, 1983, when the explosive device described above was detonated, **Freddie Haltiwanger**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

39.     Decedent, Freddie Haltiwanger, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

40.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff **Shirley Mitchell**, the sister of the Decedent, and **Mary M. and Freddie L. Haltiwanger**, the parents of the Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

41.     On October 23, 1983, when the explosive device described above was detonated, **Marion Kees**, a member of the United States Navy, and a resident of and citizen of the United

States, suffered fatal injuries.

42.     Decedent, **Marion Kees**, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

43.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff **John L. Kees**, the son of the Decedent, **Marian Kees**, the mother of the Decedent, and **Harvey Kees**, the father of the Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

44.     On October 23, 1983, when the explosive device described above was detonated, **Lyndon Hue**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

45.     Decedent, Lyndon Hue, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

46.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs **Wilton Hue** and **Elaine Hue**, the parents of the Decedent, **Wilton Hue, Jr., Jill Stoltz, Donna Myers, Myra Haynes, Brett Hue**, **Tina Hamilton, and Jarrett Hue** the siblings of Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

1975092.1

47.     On October 23, 1983, when the explosive device described above was detonated, **Marcus Coleman**, a member of the United States Army, and a resident of and citizen of the United States, suffered fatal injuries.

48.     Decedent, Marcus Coleman, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

49.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, **Kenneth Coleman** and **Dorothy Coleman**, the parents of the Decedent, and **Michael Coleman** and **Marsha Turner**, the siblings of the Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

50.     On October 23, 1983, when the explosive device described above was detonated, **David Bousum**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

51.     Decedent, David Bousum, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

52.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, **Gerald and Joanna Bousum**, the parents of the Decedent, and **Sheryl Westervelt**, the sister of the Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered

1975092.1

emotional injury and loss.

53.     On October 23, 1983, when the explosive device described above was detonated, **Charles R. Ray**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

54.     Decedent, Charles R. Ray, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

55.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, **Akiko Ray**, the spouse of the Decedent, **Dorothy Wagner**, the sister of the Decedent, and **June L. Ray** and **Lucian E. Ray, Jr**., the parents of the Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

56.     On October 23, 1983, when the explosive device described above was detonated, **Kevin Custard**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

57.     Decedent, Kevin Custard, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

58.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, **Michael Allen Custard**, the brother of the Decedent, **Terri Rea** and **Yvonne Custard**, the sisters of the Decedent,

**Lorraine Engstrom**, the mother of Decedent, and **Chyrisse Shermock**, the sister of Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

59.     On October 23, 1983, when the explosive device described above was detonated, **Richard Barrett**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

60.     Decedent, Richard Barrett, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

61.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, **James A. Barrett, Jr**., the brother of Decedent, **James Barrett**, the father of Decedent, and **Sue Barrett** and **Stephanie Barrett Elkins**, the sisters of Decedent, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

62.     On October 23, 1983, when the explosive device described above was detonated, **James Faulk**, a member of the United States Navy, and a resident of and citizen of the United States, suffered fatal injuries.

63.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, **William Faulk**, brother of James Faulk, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

15

64.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Bradley Gross**, inflicting injuries upon him resulting in pain and suffering and economic losses.

65.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Bradley Gross, in fear and apprehension of harm as a direct result of their actions.

66.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Bradley Gross, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

67.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Mark Boyd**, inflicting injuries upon him resulting in pain and suffering and economic losses.

68.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Mark Boyd, in fear and apprehension of harm as a direct result of their actions.

69.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Mark Boyd, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and

inconvenience.

70.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, the Plaintiff **Annette Boyd**, Mark Boyd's mother, endured extreme mental anguish and pain and suffering, and suffered emotional injury and loss.

71.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Timothy Whitfield**, inflicting injuries upon him resulting in pain and suffering and economic losses.

72.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Timothy Whitfield, in fear and apprehension of harm as a direct result of their actions.

73.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Timothy Whitfield, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

74.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs **Jeff Whitfield**, Timothy Whitfield's brother, **Gary Whitfield**, Timothy Whitfield's brother, **Neil Whitfield**,

Timothy Whitfield's brother, **Jimmy Whitfield**, Timothy Whitfield's brother, and **Marianne Schaffer**, Timothy Whitfield's sister, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

75. On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Scott Smith**, inflicting injuries upon him resulting in pain and suffering and economic losses.

76. The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Scott Smith, in fear and apprehension of harm as a direct result of their actions.

77. As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Scott Smith, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience

78. On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Jeffrey Kulp**, inflicting injuries upon him resulting in pain and suffering and economic losses.

79. The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Jeffrey Kulp, in fear and apprehension of harm as a direct result of their actions.

80. As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran

through its agency, the Iranian Ministry of Information and Security, Plaintiff, Jeffrey Kulp, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

81.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Leo Mora**, inflicting injuries upon him resulting in pain and suffering and economic losses.

82.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Leo Mora, in fear and apprehension of harm as a direct result of their actions.

83.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Leo Mora, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

84.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Darrell Siler**, inflicting injuries upon him resulting in pain and suffering and economic losses.

85.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Darrell Siler, in fear and apprehension of harm as a direct result of their actions.

86.     As a direct and proximate result of the willful, wrongful and intentional acts of

19

Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Darrell Siler, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

87.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, the Plaintiff **Carie McCormack**, Darrell Siler's wife, endured extreme mental anguish and pain and suffering, and suffered emotional injury and loss.

88.    On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Benjamin Foss**, inflicting injuries upon him resulting in pain and suffering and economic losses.

89.    The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Benjamin Foss, in fear and apprehension of harm as a direct result of their actions.

90.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Benjamin Foss, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

91.    As a direct and proximate result of the willful, wrongful and intentional acts of

20

Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, the Plaintiff **Patsy Foss**, Benjamin Foss' mother, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

92.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Bruce Cochran**, inflicting injuries upon him resulting in pain and suffering and economic losses.

93.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Bruce Cochran, in fear and apprehension of harm as a direct result of their actions.

94.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Bruce Cochran, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

95.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **John Ijames**, inflicting injuries upon him resulting in pain and suffering and economic losses.

96.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, John Ijames, in fear and apprehension of harm as a direct result of their actions.

97.     As a direct and proximate result of the willful, wrongful and intentional acts of

Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, John Ijames, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

98.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Ross Morrison**, inflicting injuries upon him resulting in pain and suffering and economic losses.

99.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Ross Morrison, in fear and apprehension of harm as a direct result of their actions.

100.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Ross Morrison, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

101.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Brian Zebrowski**, inflicting injuries upon him resulting in pain and suffering and economic losses.

102.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Brian Zebrowski, in fear and apprehension of harm as a direct result of their

actions.

103.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Brian Zebrowski, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

104.    On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Edward McCarron, Jr.**, inflicting injuries upon him resulting in pain and suffering and economic losses.

105.    The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Edward McCarron, Jr., in fear and apprehension of harm as a direct result of their actions.

106.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Edward McCarron, Jr., endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

107.    On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Timothy Kuehne**, inflicting injuries upon him resulting in pain and suffering and

economic losses.

108.    The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Timothy Kuehne, in fear and apprehension of harm as a direct result of their actions.

109.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Timothy Kuehne, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

110.    On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Greg Simmons**, inflicting injuries upon him resulting in pain and suffering and economic losses.

111.    The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Greg Simmons, in fear and apprehension of harm as a direct result of their actions.

112.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Greg Simmons, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

113.    On October 23, 1983 members of Hezbollah by use of an explosive device as

24

above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Al Duncan**, inflicting injuries upon him resulting in pain and suffering and economic losses.

114.    The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Al Duncan, in fear and apprehension of harm as a direct result of their actions.

115.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Al Duncan, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

116.    On October 23, 1983 members of Hezbollah by use of an explosive device as above described, **Clemon Alexander**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

117.    Decedent, Clemon Alexander, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

118.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs, **Rochelle Alexander**, the mother of the Decedent, **Clarence Alexander, Winfred B. Alexander**, the brothers of the Decedent, **Muriel Kweyama, Mijanou Alexander, and Cynthia Alexander Schwartz**, the sisters of the Decedent, endured extreme mental anguish and pain and suffering

and economic losses, and suffered emotional injury and loss.

119.   On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Charles Dallachie**, inflicting injuries upon him resulting in pain and suffering and economic losses.

120.   The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Charles Dallachie, in fear and apprehension of harm as a direct result of their actions.

121.   As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Charles Dallachie, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

122.   On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Gerald Shanley**, inflicting injuries upon him resulting in pain and suffering and economic losses.

123.   The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Gerald Shanley, in fear and apprehension of harm as a direct result of their actions.

124.   As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Gerald Shanley,

endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

## VI.   CLAIMS

### COUNT I
### Wrongful Death
### Pursuant to 28 U.S.C. § 1605A

125.    When the October 23, 1983 Beruit attack occurred, Rui Relvas,[*] John Spearing, Charles R. Ray, Freddie Haltiwanger, Marion Kees, Lyndon Hue, Marcus Coleman, David Bousum, Kevin Custard, Richard Barrett, and Clemon Alexander suffered fatal injuries.

126.    The deaths of these soldiers were caused by a willful and deliberate act of extra-judicial killing perpetrated by Defendants.

127.    Defendants, through their agents, financed the attack, planned the attack and rendered material support to the activities of Hezbollah that resulted in the deaths of the aforementioned servicemembers. Those agents were at all times acting within the scope of their agency and acted on the direction of Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

128.    Wherefore, the respective representatives of these soldiers' estates demand judgment, jointly and severally, against Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security, in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

---

[*] Those Plaintiffs who are described herein as suing on behalf of estates, and who are not yet qualified as the legal representatives of those estates, intend to initiate the process required to become so qualified as soon as is practicable.  The Plaintiffs will file an amended complaint as necessary.

**COUNT II**
**Survival Claim**
**Pursuant to 28 U.S.C. § 1605A**

129.    Decedents Rui Relvas, John Spearing, Charles R. Ray, Freddie Haltiwanger, Marion Kees, Lyndon Hue, Marcus Coleman, David Bousum, Kevin Custard, Richard Barrett, and Clemon Alexander, from the time of injury to their deaths thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

130.    Wherefore, the aforementioned individuals, and their representatives, demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

**COUNT III**
**Intentional Infliction of Emotional Distress**
**By Immediate Relatives of Deceased Victims**
**Pursuant to 28 U.S.C. § 1605A**

131.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs Josefina and Joao Relvas, as the parents of the Rui Relvas; Plaintiffs Antonio and John Relvas, as the brothers of Rui Relvas; Plaintiffs Richard M. Spearing and Samuel F. Spearing, as the brothers of John Spearing; Plaintiff Lois Spearing, as the mother of John Spearing; Plaintiff Shirley Mitchell, as the sister of Freddie Haltiwanger; Plaintiffs Mary M. Haltiwanger and Freddie L. Haltiwanger, as the parents of Freddie Haltiwanger; Plaintiff John L. Kees, as the son of Marion Kees; Plaintiffs Marian Kees and Harvey Kees, as the parents of Marion Kees; Plaintiffs Wilton Hue and Elaine Hue, as the parents of Lyndon Hue; Wilton Hue, Jr., Jill Stoltz, Donna Myers, Myra Haynes,

28

Tina Hamilton, Jarrett Hue, and Brett Hue, as the siblings of Lyndon Hue; Plaintiffs Kenneth Coleman and Dorothy Coleman, as the parents of Marcus Coleman; Plaintiffs Michael Coleman and Marsha Turner, as the siblings of Marcus Coleman; Plaintiffs Gerald and Joanna Bousum, as the parents of David Bousum; Plaintiff Sheryl Westervelt, as the sister of David Bousum; Plaintiff Dorothy Wagner, as the sister of Charles R. Ray; Plaintiffs June L. Ray and Lucian E. Ray, Jr., as the parents of Charles R. Ray; Plaintiffs Terri Rea and Yvonne Custard, as the sisters of Kevin Custard; Plaintiff Lorraine Engstrom, as the mother of Kevin Custard; Plaintiff Michael Allen Custard, as the brother of Kevin Custard; Plaintiff Chyrisse Shermock, as the sister of Kevin Custard; Plaintiff James A. Barrett, Jr., as the brother of Richard Barrett; Plaintiff James Barrett, as the father of Richard Barrett; Plaintiffs Sue Barrett and Stephanie Barrett Elkins, as the sisters of Richard Barrett; and Plaintiff William Faulk, as the brother of James Faulk, Plaintiffs Mijanou Alexander, Cynthia Alexander Schwartz, and Muriel Kweyama, as the sisters of Clemon Alexander; Plaintiffs Rochelle Alexander, as the mother of Clemon Alexander; and Plaintiffs Winfred B. Alexander and Clarence Alexander, as the brothers of Clemon Alexander have endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

132.    Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

### COUNT IV
### Battery
### Pursuant to 28 U.S.C. § 1605A

133.    By use of an explosive device as described above, members of Hezbollah,

willfully, violently and forcefully battered and did violence to the bodies of Plaintiffs Bradley Gross, Mark Boyd, Timothy Whitfield, Scott Smith, Jeffrey Kulp, Leo Mora, Darrell Siler, Benjamin Foss, Bruce Cochran, John Ijames, Ross Morrison, Brian Zebrowski, Edward McCarron, Jr., Timothy Kuehne, Greg Simmons, Al Duncan, Charles Dallachie, and Gerald Shanley inflicting injuries upon them resulting in pain and suffering and economic losses.

134.    The willful, wrongful and intentional acts of Hezbollah were funded and directed by the Islamic Republic of Iran through its agent, the Iranian Ministry of Information and Security, and constituted a battery upon the aforementioned individuals..

135.    Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

### COUNT V
### Assault
### Pursuant to 28 U.S.C. § 1605A

136.    The members of Hezbollah, as above alleged, intentionally and willfully placed Plaintiffs Bradley Gross, Mark Boyd, Timothy Whitfield, Scott Smith, Jeffrey Kulp, Leo Mora, Darrell Siler, Benjamin Foss, Bruce Cochran, John Ijames, Ross Morrison, Brian Zebrowski, Edward McCarron, Jr., Timothy Kuehne, Greg Simmons, Al Duncan, Charles Dallachie, and Gerald Shanley , in fear and apprehension of harm as a direct result of their actions.

137.    The willful, wrongful and intentional acts of Hezbollah members were funded by and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, and the aforementioned Plaintiffs were injured in that they endured extreme mental anguish, injury, and pain and suffering and economic losses.

1975092.1

138.   Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

**COUNT VI**
**Intentional Infliction of Emotional Distress**
**By Surviving Victims**
**Pursuant to 28 U.S.C. § 1605A**

139.   As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs Bradley Gross, Mark Boyd, Timothy Whitfield, Scott Smith, Jeffrey Kulp, Leo Mora, Darrell Siler, Benjamin Foss, Bruce Cochran, John Ijames, Ross Morrison, Brian Zebrowski, Edward McCarron, Jr., Timothy Kuehne, Greg Simmons, Al Duncan, Charles Dallachie, and Gerald Shanley endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of their family and friends, and was subjected to injury, pain, discomfort and inconvenience.

140.   Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

**COUNT VII**
**Intentional Infliction of Emotional Distress**
**By Immediate Relatives of Surviving Victims**
**Pursuant to 28 U.S.C. § 1605A**

141.   As a direct and proximate result of the willful, wrongful and intentional acts of

31

Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff Annette Boyd as Mark Boyd's mother; Plaintiffs Jeff Whitfield, Gary Whitfield, Neil Whitfield, Jimmy Whitfield, and Marianne Schaffer, as Timothy Whitfield's siblings; Plaintiff Carie McCormack, as Darrell Siler's wife; and Plaintiff Patsy Foss, as Benjamin Foss' mother have endured extreme mental anguish and pain and suffering, and suffered emotional injury and loss.

142.     Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

## VIII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

a)  For an award of appropriate compensatory damages under 28 U.S.C. § 1605A;

b)  For an award of punitive damages under 28 U.S.C. § 1605A in an amount sufficient to punish and/or deter similar conduct;

c)  For reasonable attorney's fees and costs;

d)  For prejudgment and postjudgment interest; and

e)  For all other available and appropriate relief.

1975092.1

March 6, 2015                          Respectfully submitted,


                                       BY:      /s/ R. Joseph Barton
                                       _____

                                       Theodore J. Leopold (D.C. Bar. No. 705608)
                                       tleopold@cohenmilstein.com
                                       COHEN MILSTEIN SELLERS & TOLL PLLC
                                       2925 PGA Boulevard
                                       Suite 200
                                       Palm Beach Gardens, FL 33410
                                       Telephone:  (877) 515-7955

                                       R. Joseph Barton (D.C. Bar. No. 476510)
                                       jbarton@cohenmilstein.com
                                       Douglas J. McNamara (D.C. Bar No. 494567)
                                       dmcnamara@cohenmilstein.com
                                       COHEN MILSTEIN SELLERS & TOLL PLLC
                                       1100 New York Ave., NW
                                       Suite 500, West Tower
                                       Washington, DC 20005
                                       Telephone:  (202) 408-4600

                                       R. Paul Hart (Ga. Bar No. 333694)
                                       paul@kmtrial.com
                                       Jeremy S. McKenzie (Ga. Bar No. 436655)
                                       jeremy@kmtrial.com
                                       KARSMAN, MCKENZIE & HART
                                       21 West Park Avenue
                                       Savannah, Georgia 31401
                                       Telephone:  (912) 335-4977


                                       *Attorneys for the Plaintiffs*